# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>DAVID WILLIAM WINICK,<br>                         Debtor,<br>_____<br><br>JOSEPH M. LEE,<br>                        Appellant,<br>v.<br>DAVID WILLIAM WINICK,<br>                        Appellee. | Case No.: 3:19-cv-01065-H-BLM<br><br>**ORDER AFFIRMING BANKRUPTCY COURT** |

On June 6, 2019, Appellant Joseph M. Lee appealed the bankruptcy court's judgment in favor of Appellee-Debtor David William Winick. (Doc. No. 1.) Appellant Lee filed his opening brief on August 19, 2019. (Doc. No. 6.) Appellee Winick filed his response brief on September 16, 2019 (Doc. No. 7), and Appellant Lee filed a reply brief on September 30, 2019. (Doc. No. 8.) For the reasons below, the Court affirms the bankruptcy court.

/ / /

/ / /

/ / /

## BACKGROUND

Joseph M. Lee seeks to assert fraud claims against David Winick, who filed for Chapter 7 bankruptcy. This bankruptcy appeal asks whether a contract's release of claims provision bars Lee from asserting that his fraud claims against Winick are nondischargeable.

Lee and several others founded Simply Smokin' Records, Inc. to operate a music club, Jazz Nouveau, at Fisherman's Wharf in San Francisco. (Doc. No. 5 at 11.) Prior to forming Simply Smokin' Records, Lee entered into a financing agreement with Creative Capital Leasing Group, LLC on April 3, 2003, on behalf of the yet to be formed Simply Smokin' Records. (Id. at 28.) Creative Capital's authorized agent for negotiating and executing this agreement was David Winick. (Id. at 11.)

The financing agreement was referred to as "Equipment Lease No. 7648-01." (Id. at 28.) According to the agreement, "Lessee agrees and acknowledges that it is in the intent of all parties to this Lease that this Lease qualifies as a Statutory Finance Lease as defined by the California Commercial Code."[1] (Id. at 23.) The agreement states that "Lessee will

---

[1] California Commercial Code § 10103(a)(7) provides:

"Finance lease" means a lease with respect to which (A) the lessor does not select, manufacture, or supply the goods, (B) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease, and (C) one of the following occurs:

    (i) The lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract.

    (ii) The lessee's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract.

    (iii) The lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of a third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods.

pay the total rent equal to the 'Amount of Each Payment' multiplied by the number of payments specified in 'Base Term of Lease' set forth." (Id.) The base term of lease was 84 months. (Id.) The agreement also states that payments were to be made "monthly," and that the amount of payment was provided in an attached Schedule "B."[2] (Id.)

The financing agreement was guaranteed by Lee and his wife in an addendum, where Lee and his wife agreed to execute and deliver a trust deed encumbering their residential property in San Francisco "[a]s collateral for the Lease . . . ." (Id. at 31-32.) According to Lee's allegations, "[a]t the time [Lee] and his wife personally guaranteed the financing agreement," David Winick told Lee that Simply Smokin' Records, Inc. "could refinance [the] financing agreement if Simply Smokin' Records, Inc. repaid whatever amount Creative Capital had advanced to Simply Smokin' Records, Inc." and "there would be no pre-payment penalty." (Id. at 14.) Lee further alleged that Lee entered into the finance agreement with Creative Capital and personally guaranteed his company's obligations "[b]ased upon David Winick's representations . . . ." (Id.)

Under the financing lease, Capital Creative disbursed $393,271 to Simply Smokin' Records, Inc. (Id. at 11.) Later in April 2003,[3] the parties entered into a Second Addendum to the finance agreement (Id. at 33-36.) The Second Addendum stated that the agreement's

---

> (iv) The lessor, before the lessee signs the lease contract, informs the lessee in writing (aa) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person, (bb) that the lessee is entitled under this division to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods, and (cc) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

[2] The referenced Schedule "B" does not appear in the record designated on appeal. (See Doc. No. 5.)

[3] The record designated on appeal contains a signed but undated copy of the Second Addendum that was attached to the complaint. (Doc. No. 5 at 33-36.) The document is dated "April ___, 2003," containing an unfilled blank for the exact day. (Id. at 36.)

guarantee was "not satisfied" because the San Francisco property had a "2nd deed of trust in the amount of $250,000 instead of only hav[ing] a 1st deed of trust as represented by Lessee in the First Addendum." (Id. at 33.) Per the Second Addendum, Lee agreed to provide an additional guarantee through another trust deed encumbering his property in Hawaii. (Id. at 34.)

On November 3, 2003, the parties entered into a Third Addendum to the agreement. (Id. at 37-42.) The recitals of the Third Addendum state, "Lessor, at the request of Lessee, has agreed to amend the Lease to modify the monthly rental payment schedule to assist Lessee with its cash flow problems." (Id. at 37) The recitals continue, "Lessee acknowledges that it is in default under the terms of the Lease and that a portion of the September 2003 and all of the October 2003 payments . . . in the amount of $11,774, are past due along with late payment fees of $1,946.50." (Id.) After providing a modified payment schedule, the Third Addendum states,

> [o]n the condition precedent that Lessee makes each of the payments required by the preceding paragraph when due, and that neither Lessee nor Guarantors are in default under the terms of the Lease Documents, Lessor agrees to withhold any action to accelerate payments under the Lease or to enforce its rights under the Lease. All other agreements and provisions of this Addendum shall be unconditional and immediately in effect upon execution . . . .

(Id. at 38.)

The Third Addendum also contains a "Release of Claims" provision. (Id. at 39.) The provision releases Winick

> from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action, or claims for relief of whatever kind of nature, whether known or unknown . . . resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, before the date hereof.

(Id. at 39.) After the general release follows a paragraph titled, "Release Includes Unknown Claims." (Id.) This paragraph states,

> Releasing Parties expressly acknowledge that although it may be that ordinarily a general release does not extend to claims which the releasing party

4

3:19-cv-01065-H-BLM

does not know or suspect to exist in its favor . . . each Releasing Party has carefully considered and taken into account in determining to enter into this Amendment the possible existence of such unknown losses or claims.

(Id. at 39-40.) The paragraph includes a waiver of any rights conferred by California Civil Code § 1542. This section of the Third Addendum concludes that these provisions "shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, or obligation." (Id. at 40.)

Lee sought to refinance his agreement with Creative Capital, and in October 2003, Lee arranged for a loan in the amount of $635,000 from Washington Mutual Bank. (Id. at 14.) When Lee informed Creative Capital that he wished to refinance the lease, Winick informed Lee that the payoff amount was more than $1,000,000 under the terms of the lease. (Id.) In response, Lee's counsel sent a letter to Winick on December 3, 2003, claiming that the amount Simply Smokin' Records owed was $352,653, not $1,000,000. (Id.) On February 26, 2004, Creative Capital's counsel sent a letter to Lee with a demand for payment, stating that Lee owed $1,020,070.37, including "the balance of payments due on the lease" and "unpaid late charges." (Id. at 54.)

In April 2006, Lee filed an action in the San Francisco Superior Court "to reform the financing documents to conform those documents to a loan." (Id. at 12-13.) On May 4, 2006, the San Francisco Superior Court allowed Lee to amend his complaint to name Winick as a defendant and to allege additional causes of action, including a claim for fraud. (Id. at 13.) The action was transferred to the Superior Court of San Diego, and on August 16, 2016, Lee obtained a default judgment against Winick. (Id.)

On May 22, 2018, Winick filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Southern of District of California, Bankruptcy Case No. 18-03106-LT7. (Id. at 5, 10.) On August 2, 2018, Lee filed an adversary complaint, Adversary Proceeding No. 18-90110-LT. (Id. at 5.) In the complaint, Lee alleged that Winick committed fraud by falsely representing that Lee "could refinance [the] financing agreement if Simply Smokin' Records, Inc. repaid whatever amount Creative Capital had advanced to Simply Smokin'

Records, Inc. and that there would be no pre-payment penalty." (Id. at 14.) Lee then argued that his fraud claims against Winick are nondischargeable despite Winick's bankruptcy because such debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Winick filed a motion to dismiss. (Doc. No. 5 at 56-69.) In the motion, Winick argued that he made no misrepresentation because the "amount due was based on the monthly lease payment multiplied by the lease term of 84 months" and was "simply the amount due under the lease terms." (Id. at 62.) Winick also argued, in any event, that Lee's claims were barred due to the release of claims provision in the agreement's Third Addendum.[4] (Id. at 65-69.)

The bankruptcy court issued a tentative ruling on April 30, 2019 and held a hearing on the motion on May 1, 2019. (Id. at 133-53.) At the hearing, the bankruptcy judge stated, "even if I buy that you pled fraud in the inducement or fraud underlying the initial contract back in the day, we have the release [of liability provision] . . . . in a document, the third amendment which is attached to your complaint." (Id. at 138.) On May 31, 2019, the bankruptcy court issued its finding of facts and conclusions of law and granted Winick's motion to dismiss. (Id. at 118-23). The bankruptcy court held that "[t]he Third Addendum's Release is valid" and that Lee "failed to **plead or even argue** any plausible theory for novat or rescission of the Third Addendum." (Id. at 121) (emphasis in original.) The bankruptcy court concluded, "even if the Court assumes that all facts set forth in the Second Amended Complaint are true . . . the Release affords [Winick] an absolute affirmative defense to [Lee's] claims." (Id.)

///
///

---

[4] Winick also argued that Lee did not plead adequately specific facts to make a fraud claim and that even if Winick made oral representations, those oral representations could not be considered part of the agreement because of the agreement's integration clause. (Doc. No. 5 at 61-62.) The bankruptcy court did not find it necessary to address those claims in its ruling, and those claims were not raised on appeal. (Id. at 104-07; Doc. No. 6 at 6.)

6

3:19-cv-01065-H-BLM

# DISCUSSION

## I. Legal Standard

A district court reviews a bankruptcy judge's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. See In re Greene, 583 F.3d 614, 618 (9th Cir. 2009); In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997). An order granting a motion to dismiss is reviewed de novo. Hebbe v. Pliler, 627 F.3d 338, 341 (9th Cir. 2010) (quotation marks omitted); In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010) (quotation marks omitted). The district court must accept the bankruptcy court's factual findings "unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." In re Straightline Investments, Inc., 525 F.3d 870, 876 (9th Cir. 2008). "Mixed questions of law and fact are reviewed de novo." In re JTS, 617 F.3d at 1109. A mixed question of law and fact occurs when the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. See In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997). When sitting as an appellate court in bankruptcy, the district court need not adopt the bankruptcy court's rationale and may affirm on any basis supported by the record. See In re Frontier Properties, Inc., 979 F.2d 1358, 1364 (9th Cir. 1992).

Under Federal Rule of Civil Procedure 8(a)(2),[5] Appellant must present a plausible claim to withstand a motion to dismiss. As the Supreme Court has explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of

---

[5] Federal Rule of Civil Procedure 8 applies to the bankruptcy court's adversary proceeding under Bankruptcy Rule 7008.

further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citations, quotation marks, and brackets omitted). In reviewing a Rule 12(b)(6)[6] motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). A court need not accept legal conclusions as true. Iqbal, 556 U.S. at 678. Additionally, it is improper for a court to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). A court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Finally, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (internal citations omitted).

**II. Analysis**

Lee argues that the bankruptcy court erred in dismissing his 11 U.S.C. § 523(a)(2)(A) nondischargeability claims due to the Third Addendum's release of claims provision. (Doc. No. 6 at 6.) Appellant argues that this was error for two reasons: (1) the release provision is unenforceable due to fraud in the inducement, and (2) the release provision is unenforceable because Appellee breached the contract. (Id. at 12-20.) After review of the pleadings, documents incorporated into the complaint, and the parties' arguments, the Court concludes that the bankruptcy court should be affirmed.

///

---

[6] Federal Rule of Civil Procedure 12(b) applies to the bankruptcy court's adversary proceeding under Bankruptcy Rule 7012(b).

8

### A. Fraud in the Inducement

Lee argues that the release provision is unenforceable because Winick allegedly committed fraud in the inducement, and California Civil Code § 1668 voids any provision immunizing a party from liability for committing fraud.[7] California Civil Code § 1668 states, "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . are against the policy of the law." See also Simmons v. Ratterree Land Co., 17 P.2d 727, 728 (Cal. 1932); Manderville v. PCG&S Grp., Inc., 55 Cal. Rptr. 3d 59, 70 (Cal. Ct. App. 2007). Because fraudulent inducement is a claim under state law, the Court applies de novo review. Matsuura v. Alston & Bird, 166 F.3d 1006, 1008 n.3 (9th Cir.), opinion amended on denial of reh'g, 179 F.3d 1131 (9th Cir. 1999).

Section 1668 "negates a contractual clause exempting a party from responsibility for fraud or a statutory violation only when all or some of the elements of the tort are concurrent or future events at the time the contract is signed." SI 59 LLC v. Variel Warner Ventures, LLC, 239 Cal. Rptr. 3d 788, 790 (Cal. Ct. App. 2018), review denied (Feb. 13, 2019). To show fraudulent inducement,[8] a party must show: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 909 P.2d 981, 984 (Cal. 1996) (citing 5 Witkin, Summary of California Law, Torts (9th ed. 1988)).

Lee's fraud claim does not void the release because Lee has failed to plead facts

---

[7] Lee raises California Civil Code § 1668 for the first time on appeal. The Court considers the issue because it is a "pure question of law" and Winick will not be unfairly prejudiced by the Court's consideration of the question. Silveira v. Apfel, 204 F.3d 1257, 1260 n.8 (2000).

[8] Appellant's second amended complaint also makes a promissory fraud claim. (Doc. No. 5 at 16-17.) Promissory fraud and fraudulent inducement share the same elements. See Lazar v. Superior Court, 909 P.2d 981, 984 (Cal. 1996). While the two types of claims may differ slightly regarding the parol evidence rule, see Copart, Inc. v. Sparta Consulting, Inc., 2018 WL 1014617, at *2 (E.D. Cal. Feb. 21, 2018), those differences have no bearing in this case.

showing fraud in the formation of the Third Addendum, which contains the release provision at issue. See SI 59 LLC, 239 Cal. Rptr. 3d at 790 ("[Section 1668] has been applied to negate exemption clauses that would otherwise proscribe liability for fraudulent inducement of the very contracts with the exemption clauses."). While Lee does allege fraud, he does so only in the context of the initial financing agreement, not the Third Addendum. (See Doc. No. 5 at 11-19.) For example, under his claim for fraudulent inducement, Lee asserts that Winick "intended to deceive [Lee] and [Lee's] wife in order to induce them to personally guarantee the Creative Capital financing agreement." (Id. at 15.) Similarly, in his false promise claim, Lee alleges that "David Winick promised . . . that Simply Smokin' Records, Inc. could pay off the Creative Capital financing agreement by repaying the amount of money advanced by Creative Capital, less payments made by Simply Smokin' Records, Inc" and that "[Lee] and his wife would not have signed the personal guarantee if David Winick had not made this promise." (Id. at 16-17.) A section of Lee's pleadings addresses the Third Addendum but only makes allegations about Winick's breaches of the Addendum. (See id. at 17-20.) Thus, Lee does not plausibly allege that Winick fraudulently induced Lee's agreement to the Third Addendum.

Lee does plead, in his economic duress allegations,[9] that "[a]t the time [Lee] and his wife were asked to sign the Third Addendum, David Winick told Plaintiff, falsely, that the Creative Capital financing agreement was a lease that had a payoff amount in excess of $1 million . . . ." (Id. at 20.) But this allegation does not plausibly show that Winick fraudulently induced the Third Addendum. First, Lee's claim that Winick falsely represented the payoff amount as more than $1 million contradicts Lee's earlier fraud allegation that Winick falsely represented that the payoff amount was "the amount Creative Capital had advanced," or $393,271. (Id. at 11, 14.) Second, Lee does not allege that he relied upon this purportedly false representation when signing the Third Addendum,

---

[9] In his second amended complaint, Lee also alleged that the Third Addendum is unenforceable due to economic duress. (Doc. No. 5 at 20-21.) The bankruptcy court rejected this claim (id. at 139) and Lee did not raise this claim on appeal. (Doc. No. 6. at 6.)

because Lee states that he and his wife signed the Third Addendum "rel[ying] upon the promises made by Creative Capital in the Third Addendum," namely Creative Capital's statements that it would forebear from enforcing its rights due to Lee's prior default. (Id.) Consequently, Lee's pleadings only allege fraud in the formation of the initial financing agreement. Since the initial financing agreement was made in April 2003 (id. at 28, 31-32), Lee does not plead sufficient facts to show that fraud in the initial agreement tainted the separate Third Addendum agreed to seven months later in November 2003.

Further, California Civil Code § 1668 does not void provisions that exempt parties for liability for past misconduct. Section 1668 "negates a contractual clause exempting a party from responsibility for fraud . . . only when all or some of the elements of the tort are concurrent or future events at the time the contract is signed." SI 59 LLC, 239 Cal. Rptr. 3d at 790. Thus, "section 1668 does not negate such a clause when all the elements are past events." Id.; Watkins v. Wachovia Corp., 92 Cal. Rptr. 3d 409, 418 n.12 (Cal. Ct. App. 2009). Here, the Third Addendum's release provision only applies to claims "resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, before the date hereof." (Doc. No. 5 at 39.) Since Lee's allegations of fraud surround the formation of the financing agreement in April 2003, the November 2003 release is being used only to preclude claims resulting from past events. Accordingly, § 1668 does not negate the release of liability provision.

In Lee's reply brief, he argues that SI 59 LLC "does not apply" because the "general release in that case applied to a past event" while "the situation [here] is much different when the general release is applied to fraudulent inducement of the very contract which contains the exemption clause." (Doc. No. 8 at 8.) His argument might be reframed as two distinct claims: (1) the Third Addendum and initial financing agreement form the same overarching contract, meaning that fraud in the initial financing agreement voids the Third Addendum as well; or (2) the alleged fraud by Winick was not a past event, but an ongoing deception that continued through when the Third Addendum was signed. Neither argument persuades the Court.

First, though the Third Addendum and initial financing agreement may form one agreement when deciding which provisions are binding, the same does not apply when analyzing the agreements for fraud. It is "a familiar rule" that "where several papers covering the same subject matter are executed by . . . the same parties . . ., all are to be considered together, and with the same effect as if all had been incorporated in one document." Versaci v. Superior Court, 26 Cal. Rptr. 3d 92, 97–98 (Cal. Ct. App. 2005) (internal quotation marks and citations omitted); Cal. Civ. Code § 1642. But this rule only determines that provisions from both documents may form binding parts of the agreement. See Versaci, 26 Cal. Rptr. 3d at 97–98.

The rule does not govern fraud, which treats subsequent agreements separately. See Schmidt v. Mesmer, 48 P. 54, 56 (Cal. 1897), overruled on other grounds by Bagdasarian v. Gragnon, 192 P.2d 935 (Cal. 1948) ("If, after his knowledge of what he claims to have been the fraud, he elects not to rescind . . . [he] must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud."); Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc., 51 Cal. Rptr. 3d 144, 150 (Cal. Ct. App. 2006) (same). Thus, when a party asserts fraud claims and the provisions of an amendment or addendum are at issue, the question is whether there was fraudulent inducement of the later amendment or addendum. Cf. R Power Biofuels, LLC v. Chemex LLC, 2017 WL 1164296, at *8 (N.D. Cal. Mar. 29, 2017) (discussing fraudulent inducement with regard to a possible "standalone agreement" or "modification to a contract"); Lee v. Fed. St. L.A., LLC, 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016) (discussing claim for fraudulent inducement concerning party's agreement to a "Second Addendum"); Intelligraphics, Inc. v. Marvell Semiconductor, Inc., 2008 WL 3200212, at *11 (N.D. Cal. Aug. 6, 2008) ("A separate question is whether Intelligraphics reasonably relied on the alleged representations by Marvell in entering into Amendment 3."). Since Lee does not allege fraudulent inducement of the Third Addendum and its release provision, he cannot claim "fraudulent inducement of the very contract which contains the exemption clause." (Doc. No. 8 at 15.)

Second, Lee does not plausibly allege that Winick's fraud was an ongoing deception.

Lee states, "[i]t was only much later, after the Third Addendum had been executed, that this representation made by Winick proved to be false." (Doc. No. 8 at 8-9.) But Lee does not allege that he continued to rely on Winick's representation that the payoff amount was "the amount Creative Capital had advanced," $393,271. (Doc. No. 5 at 11, 14.) In fact, Lee pleads the opposite. He alleges that "[a]t the time [Lee] and his wife were asked to sign the Third Addendum," Winick told Lee that the payoff amount was "in excess of $1 million." (Id. at 20.) Thus, Lee cannot plausibly claim that he continued to rely on Winick's initial representation when Lee signed the Third Addendum. Because Lee does not plausibly allege an ongoing fraud, the Third Addendum's release provision bars Lee's fraud claim. See SI 59 LLC, 239 Cal. Rptr. 3d at 790.

**B.    Lee's Allegations that Winick Breached the Third Addendum**

Next, Lee argues that the release of claims provision is unenforceable because Winick breached the Third Addendum, and that the bankruptcy court erred because it "ignored the law that says a breaching party cannot enforce the contract." (Doc. No. 6 at 20.) In California, "[i]t is well settled" that a party "injured by a breach of contract" may pursue one of three remedies:

> He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.

Alder v. Drudis, 182 P.2d 195, 201 (Cal. 1947). "A breach does not terminate a contract as a matter of course but is a ground for termination at the option of the injured party." Whitney Inv. Co. v. Westview Dev. Co., 78 Cal. Rptr. 302, 308 (Cal. Ct. App. 1969). "Thus, a finding of termination is not one which must be implied from a finding of breach." Id.

The bankruptcy court correctly held that Lee, not Winnick, "breached the Third Addendum in November 2003 by defaulting on the payments due." (Doc. No. 5 at 119.)

The Third Addendum provides a modified pay schedule:

    a. September 2003 lease payment in the amount of $1,618 plus late fee of $930.90 shall be due on 11/10/03.

    b. The first half of the October 2003 lease payment in the amount of $5,078 plus late fee of $507.80 shall be due on 11/18/03.

    c. The second half of the October 2003 lease payment in the amount of $5,078 plus late fee of $507.80 shall be due on 11/25/03.

    d. The first half of the November 2003 lease payment in the amount of $5,078 plus late fee of $507.80 shall be due on 11/30/03.

    e. The second half of the November 2003 lease payment in the amount of $5,078 plus late fee of $507.80 shall be due on 12/9/03.

(Doc. No. 5 at 37-38.) In sum, the Third Addendum required Lee to pay $19,306.30 by the end of November 2003. But in a letter that Lee attached to his second amended complaint, Lee's counsel states that Lee only paid $6,500 over the course of November. (Id. at 50.) Lee's counsel also admitted Lee's default under the Third Addendum in the hearing on the motion to dismiss.[10] (Id. at 142-43.) By defaulting under the Third Addendum, Lee breached its provisions requiring him to "pay the defaulted monthly payments" as set in the agreement. (Id. at 37-38.) Since Lee breached the Third Addendum, Lee was not the injured party, and cannot claim the remedy of rescinding the Third Addendum and its release provision. See Alder, 182 P.2d at 201 (remedies only available to "one who has been injured by breach of contract"); Whitney Inv. Co., 78 Cal. Rptr. At 308 ("A breach . . . is a ground for termination at the option of the injured party.").

Further, Lee does not plausibly allege that Winick breached or mutually breached the Third Addendum because Winick's actions were consistent with the agreement. Mutual breaches of a contract "cancel each other out" when the breaches "concerned the same

---

[10] On a motion to dismiss, "facts . . . which have since been conclusively contradicted by plaintiffs' concessions are also appropriate for consideration." Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1117 (9th Cir. 2018) (internal citations and quotation marks omitted).

issue" and "occurred during one episode of the contractual relationship." <u>Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 791 F.2d 1356, 1362 (9th Cir. 1986). But there is "no justice in permitting a plaintiff to complain of unfair dealing in a transaction when he himself has not fulfilled in good faith his contractual obligations with regard to that transaction." <u>Id.</u> Though courts accept an allegation as true on a motion to dismiss, they do so only when the claim is "plausible on its face." Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task." <u>Id.</u> 679.

Here, Lee does not plausibly allege that Winick breached the Third Addendum because the claims are contradicted by the text of the Third Addendum. The Third Addendum provides,

> [o]n the conditions precedent that Lessee makes each of the payments required by the preceding paragraphs when due, and that neither Lessee nor Guarantors are in default under the terms of the Lease Documents, Lessor agrees to withhold any action to accelerate payments under the Lease or to enforce its rights under the Lease.

(<u>Id.</u> at 38.) Because Lee defaulted under those terms, the Third Addendum permitted Winick to impose late fees, maintain the liens on Lee's properties, and pursue foreclosure. (<u>Id.</u>) Since Lee defaulted, he also was not entitled to "a final distribution" due to "early payoff," nor was he entitled to the remaining balance of the original financing. (<u>Id.</u> at 19-20.) For the same reasons, Winick's decision to enforce his rights under the original finance agreement does not amount to a rescission of the Third Addendum and its release provision because Winick's actions were consistent with the Third Addendum, not a repudiation of it. (<u>Id.</u>) Thus, the bankruptcy court properly held that Lee failed to plead a "plausible theory for novat or rescission of the Third Addendum." (<u>Id.</u> at 139.) Accordingly, the Court affirms the bankruptcy court's ruling that the release of liability provision bars Lee's § 523(a)(2)(A) nondischargeability claim.

/ / /

/ / /

## **CONCLUSION**

For the reasons above, the Court affirms the bankruptcy court's judgment in favor of Appellee David Winick. The Court directs the Clerk of Court to close the case.

**IT IS SO ORDERED.**

DATED: October 3, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT